Wayne P. WILSON, Plaintiff,

v.

Armand D. DE ANGELIS and
U.S. Coin Exchange, Inc.,
Defendant.

No. 00–3594–CIV.

United States District Court,
S.D. Florida.

June 27, 2001.

A. Margaret Hesford, Margate, FL, for plaintiff.

Michael Leland Addicott, Addicott & Addicott, Hollywood, FL, for defendant.

## ORDER DENYING IN PART DEFENDANT'S MOTION TO DISMISS

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss (**D.E. No. 13**), filed on **December 12, 2001**.

THE COURT has considered the motion, responses, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that the motion is GRANTED as to the fraud and negligent misrepresentation counts, and DENIED as to all other counts.

### LEGAL STANDARD

A court will not grant a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no facts that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." *Id.* at 47, 78 S.Ct. 99. All that is required is "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *St. Joseph's Hospital, Inc. v. Hospital Corp. of America*, 795 F.2d 948 (11th Cir.1986). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his theories, but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove allegations. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986).

## BACKGROUND

Plaintiff alleges an elaborate fraudulent scheme by Defendant Armand A. De Angelis, the president of Defendant U.S. Coin Exchange, Inc. ("US Coin"), in connection with ten purchases of bullion coins totaling $349,993 from August 1998 through May 1999. Plaintiff claims that the purchase price of the coins was grossly inflated and that they were worth only $122,000 at the time of the purchases. Plaintiff alleges that De Angelis' conduct in connection with the sales violated both the federal and Florida Racketeer Influenced and Corrupt Organizations Acts ("RICO"). Plaintiff also filed suit against U.S. Coin for common law fraud, negligent misrepresentation, unjust enrichment, and rescission.

Plaintiff asserts that De Angelis misrepresented the value of the coins prior to each transaction, stating that the coins were sold at market value (if not lower than market value) and that the coins were an excellent investment. De Angelis is alleged to have convinced Plaintiff to divest his Charles Schwab IRA account to fund the coin purchases, counseling Plaintiff on which forms to use and tax consequences. De Angelis allegedly advised Plaintiff to diversify his portfolio, in part based upon concerns over the "Y2K" computer problems and insecurities in the United States fiat money system. De Angelis also is alleged to have encouraged Plaintiff to refer others to U.S. Coin, offering a five percent commission on any referral. The above-described scheme was perpetrated through mail and wire fraud, as all transactions were done over the telephone and through the mail.

Defendants move to dismiss the complaint. De Angelis claims that both RICO claims fail because (a) the "enterprise" is not distinct from the person, (b) the "racketeering activity" is insufficient because of unreasonable or unjustifiable reliance on puffing, and (c) there exists no "pattern" because of a lack of continuity and lack of relation between the alleged schemes. De Angelis also seeks to dismiss the Florida RICO claims because (a) the Florida "pattern" definition precludes a single transaction, and (b) the economic loss rule prevents tort damages under this count. US Coin moves to dismiss Plaintiff's fraud and negligent misrepresentation claims under the economic loss rule. US Coin seeks to dismiss the unjust enrichment claim because there exists a contractual remedy. Lastly, U.S. Coin argues that Plaintiff's rescission claim should be dismissed because rescission is an equitable remedy, not a claim.

## LEGAL ANALYSIS

### I. FEDERAL AND STATE RICO CLAIMS AGAINST DE ANGELIS

"Florida's RICO statutes have consistently been interpreted using federal RICO cases." *All Care Nursing Serv. v. High Tech Staffing*, 135 F.3d 740 (11th Cir.1998). Accordingly, this Court shall adjudicate both federal and state RICO claims together. However, the Court will analyze De Angelis' separate grounds for dismissal of the Florida RICO claim in turn, while adjudicating all of De Angelis' grounds for dismissal that are common to both federal and state RICO.

RICO proclaims that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "Racketeering activity" consists of any enumerated federal and state crime listed in § 1961(1) of the statute. A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which oc-

curred after the effective date of [RICO] and the last of which occurred within ten years (excluding any term of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

RICO establishes both criminal and civil penalties for violations of § 1962. Section 1964(c) provides a private cause of action in federal district court for "any person injured in his business or property by reason of a violation of section 1962." The injured party may recover treble damages, as well as costs. De Angelis is alleged to be indictable under the following statutory provisions, the violations of which purportedly form a pattern of racketeering activity: 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud).

## A. Enterprise Distinctiveness

■ De Angelis posits that dismissal of all RICO claims is appropriate because Plaintiff's enterprise is deficient because Plaintiff names U.S. Coin as the enterprise and not a defendant, yet one of its officers is named as the defendant, relying upon *Cedric Kushner Promotions, Ltd. v. Don King*, 219 F.3d 115 (2nd Cir.2000). The parties acknowledge a circuit split on this issue of whether a corporate officer acting within the scope of his authority is distinct from the corporation within the meaning of a RICO enterprise. Plaintiff argues that the Court should follow all other circuits who have ruled on the issue and find that De Angelis is distinct from U.S. Coin. The Supreme Court resolved this issue on June 11, 2001, when it overruled the Second Circuit. *Cedric Kushner Promotions, Ltd. v. Don King*, —— U.S. ——, at —— – ——, 121 S.Ct. 2087, 2090–92, 150 L.Ed.2d 198 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more

'separateness' than that[,] ... even where the employee is the corporation's sole owner.") (citation omitted). Therefore, the Court rejects De Angelis' argument and finds that Plaintiff's enterprise is pled sufficiently.

## B. Sufficiency of Mail and Wire Fraud Allegations

Next, De Angelis argues that dismissal is warranted because the alleged racketeering activities are insufficient as a matter of law because of Plaintiff's unreasonable and unjustifiable reliance on puffing. *See United States v. Brown*, 79 F.3d 1550, 1557 (11th Cir.1996) ("'[P]uffing' or 'sellers' talk' is ... not actionable under the mail [or wire] fraud statute[s]."). As discussed earlier, Plaintiff alleges mail and wire fraud in connection with the ten transactions where Plaintiff purchased bullion coins for $349,993, based in part upon De Angelis' representations that the purchases were excellent investments.

■ Mail or wire fraud occurs when an individual (1) intentionally participates in a scheme to defraud another of money or property, and (2) uses the mail or wires in furtherance of that scheme. *United States v. Downs*, 870 F.2d 613, 615 (11th Cir. 1989). A "scheme to defraud" involves the making of misrepresentations "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Pelletier v. Zweifel*, 921 F.2d 1465, 1498–99 (11th Cir.1991). The "person of ordinary prudence" is an objective standard. *E.g., Brown*, 79 F.3d at 1557.

The Eleventh Circuit has acknowledged that under certain circumstances, a person outside of a fiduciary relationship may justifiably rely on representations of future wealth or investment potential. *Id.* at 1558. "This circumstance—which is present in most mail fraud cases—arises where a reasonable jury could find that a person

of ordinary prudence would not know that he should not rely on these representations." *Id.* at 1558–59. The *Brown* court cites to *United States v. Kail,* 804 F.2d 441 (8th Cir.1986), as an example of an instance where a consumer in a non-fiduciary relationship was justified in relying upon misrepresentations. In *Kail,* the Eighth Circuit affirmed the jury finding of fifteen counts of mail fraud based upon Defendant's misrepresentations that the bullion coins purchased were a valuable investment. *Id.* at 445 ("[T]he evidence demonstrates that Kail's representations with regard to the market value of the coins were false, and that these representations were made with an intent to defraud.")

■ At this stage of the proceeding, Plaintiff's allegations establish *prima facie* claims of mail and wire fraud based upon De Angelis' conduct in persuading Plaintiff to enter into ten transactions for the purchase of bullion coins at prices that are alleged to be grossly inflated. The issue of whether a reasonable juror would conclude that De Angelis' statements made in connection with the transactions were mere puffing is inappropriate for final resolution as the motion to dismiss stage. *E.g., In re Managed Care Litig.,* 150 F.Supp.2d 1330, 1345–46 (2001) ("Clearly this issue must await review at a later stage in the proceedings.").

## C. Pattern of Racketeering Activity

De Angelis also seeks to dismiss the RICO claims because the "pattern of racketeering activity" is not pled because of a lack of continuity and lack of relation between the alleged schemes, which transpired over a ten or eleven month period. In *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court defined continuity as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241–42, 109 S.Ct. 2893. Accordingly, a pattern of racketeering activity requires proof of more than just the mere existence of two predicate acts. *E.g., Jones v. Childers,* 18 F.3d 899, 912 (11th Cir.1994) ("Though 'continuity' may be established by showing that the predicate acts are part of the way a defendant regularly conducts his business, this showing ordinarily must encompass a sustained period or set of examples sufficient to draw this conclusion with reasonable certainty.").

■ De Angelis is alleged to have committed mail and wire fraud in connection with persuading Plaintiff to purchase bullion coins on ten separate occasions from July 1998 to May 1999. De Angelis also is alleged to have solicited Plaintiff to work for a commission with De Angelis in his scheme to sell bullion coins. These factual allegations satisfy Plaintiff's burden at this stage of the proceeding under both the closed-ended and open-ended concepts of continuity. *See id.* The Court finds distinguishable *Aldridge v. Lily–Tulip, Inc. Salary Retirement Plan Benefits Comm.,* 953 F.2d 587 (11th Cir.1992), where the court found no continuity or pattern between the three alleged predicates acts that took place over a six month period of time. *See id.* at 593 ("[P]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the pattern requirement.") (citation omitted).

Moreover, the Court is unable to appreciate De Angelis' argument that there is a lack of relation between the alleged predicate acts. De Angelis attempts to argue that there are only two alleged predicate acts: one involving the sale of coins to the public and the other involving prospective investments in U.S. Coin and another cor-

poration by two individuals (Plaintiff and Haselwander). (Defendants' Motion to Dismiss, at 12.) The Court's review of Plaintiff's complaint finds that Plaintiff has alleged mail and wire fraud in connection with Plaintiff's ten purchases of coins from U.S. Coin, orchestrated by De Angelis' misrepresentations over the telephone and through the mail. There is a sufficient relationship between the alleged acts of mail and wire fraud to satisfy the relationship prong of a "pattern of racketeering activity." *See Jones*, 18 F.3d at 914.

■ De Angelis also argues that Florida's RICO statute has a special definition of "pattern," which excludes two or more incidents of fraudulent conduct arising out of a single transaction. Fla. Stat. § 772.102(4) (defining pattern of criminal activity as "at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents . . . ."). The alleged fraudulent conduct of De Angelis did not involve one single transaction. Rather, it involved fraud in connection with ten separate purchases of coins by Plaintiff totaling $349,993 over a ten or eleven month period. Plaintiff's allegations sufficiently state a "pattern" under Florida RICO, as well as federal RICO.

### D. Economic Loss Rule Under Florida RICO

■ Defendant also seeks dismissal of Plaintiff's Florida RICO claims based upon the economic loss rule, citing to *Moore Business Forms, Inc. v. Iberoamerican Electronics, S.R.L,* 698 So.2d 611 (Fla.Dist.

Ct.App. 3rd 1997), and *Ginsberg v. Lennar Florida Holdings, Inc.,* 645 So.2d 490 (Fla. Dist.Ct.App. 3rd 1994). Defendant argues that the Eleventh Circuit was in error in its 1998 application of Florida law when it ruled in *All Care Nursing Serv. v. High Tech Staffing,* 135 F.3d 740 (11th Cir. 1998), that "the economic-loss rule does not bar [Florida RICO] claims." *Id.* at 745. This Court is bound to follow the Eleventh Circuit and accordingly finds that the economic loss rule does not prevent Plaintiff from advancing his Florida RICO claims.[1]

## II. PLAINTIFF'S CLAIMS AGAINST U.S. COIN

### A. Economic Loss Rule—Fraud and Negligent Misrepresentation

Plaintiff alleges fraud and negligent misrepresentation against Defendant U.S. Coin in connection with the ten transactions for the purchase of bullion coins. Each transaction was effectuated through purchase orders. Accordingly, U.S. Coin moves to dismiss the fraud and negligent misrepresentation claims based upon the economic loss rule, which states that "[c]ontract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage." *Florida Power & Light Co. v. Westinghouse Electric Corp.,* 510 So.2d 899, 902 (Fla.1987) (stating that "the purchaser . . . can protect his interests by negotiation and contractual bargaining or insurance. The purchaser has the choice to forego warranty protection in order to obtain a lower price.").

---

**1.** In any event, the economic loss rule would not bar Plaintiff's Florida RICO claims because Defendant's alleged misconduct occurred, in part, prior to the purchases of the coins. *E.g., HTP, Ltd. v. Lineas Aereas Costar-* *icenses, S.A.,* 685 So.2d 1238, 1239 (Fla. 1996) ("Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.").

■ The Court finds that Plaintiff's fraud and negligent misrepresentation claims are barred by the economic loss rule, as these claims are inextricably intertwined with the ten purchase orders. However, as requested by Plaintiff in his opposition to the current motion, Plaintiff will be permitted to amend the complaint no later than July 20, 2001 to include a claim of fraudulent inducement. While the current factual allegations in the complaint support such a claim, the Court desires that the complaint be specifically tailored to include only one claim for fraudulent inducement, as the current general fraud claim involves allegations of both fraudulent inducement and fraud in fact.

## B. Unjust Enrichment

■ US Coin moves to dismiss the unjust enrichment claim because it claims that the purchase orders executed in conjunction with the coin purchases constitutes a contract between the parties. *E.g., Nautica Int'l, Inc. v. Intermarine USA, L.P.,* 5 F.Supp.2d 1333, 1341–42 (S.D.Fla. 1998) (holding that equitable claim of unjust enrichment unavailable where the plaintiff has an adequate legal remedy at law). To establish a claim of unjust enrichment, Plaintiff must allege that: (1) there was a benefit conferred upon U.S. Coin by Plaintiff, (2) there was appreciation of such benefit by U.S. Coin, and (3) there was acceptance and retention of such benefit by U.S. Coin under circumstances where it would be inequitable for U.S. Coin to retain it without paying full value. *Id.* at 1341 (citations omitted).

■ Plaintiff alleges in the complaint that "no adequate legal remedy exists to compensate Plaintiff." (Complaint at ¶ 365.) This allegation, coupled with Plaintiff's allegations concerning the fraudulent scheme to sell Plaintiff bullion coins at grossly inflated prices, establishes a *prima facie* claim of unjust enrichment. *Cf.*

*Nautica Int'l, Inc.,* 5 F.Supp.2d at 1342 (dismissing unjust enrichment claim because the plaintiff failed to allege that an adequate remedy at law does not exist).

## C. Rescission

US Coin moves to dismiss the rescission claim because rescission is an equitable remedy, not a cause of action. US Coin argues that rescission is generally not available for breach of contract unless there is some other ground that requires equity to intervene, such as fraud or impossibility of determining money damages. US Coin opines that damages may be determined by computing the difference between the $349,993 paid and the fair market value of the coins, $122,000.

Plaintiff responds by highlighting the fact that U.S. Coin cites no authority for the proposition that rescission is not a claim. Plaintiff argues that he has pled a *prima facie* cause of action for rescission, including the fact that the parties can be returned to the status quo through rescission.

■ "Rescission is generally available as a remedy or defense for a nondefaulting party and restores the parties to their precontractual positions." BLACK'S LAW DICTIONARY 1308 (7th ed.1999). The Court finds that Plaintiff has established a *prima facie* claim for rescission based upon U.S. Coin's alleged fraudulent conduct in procuring the ten coin purchases and the fact that the parties can be returned to their precontractual positions through this claim.

## CONCLUSION

It is,

ADJUDGED that Defendant's motion to dismiss is GRANTED as to Plaintiff's fraud and negligent misrepresentation counts. Plaintiff may file an amended

complaint including a count of fraudulent inducement no later than *July 20, 2001.* It is also

ADJUDGED that Defendant's motion to dismiss is DENIED as to all other counts.