UNITED STATES of America,
Plaintiff–Appellee,

v.

Antonio FRANCO, Defendant–Appellant.

No. 88–2006.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1989.
Decided April 21, 1989.

Allan A. Ackerman, Chicago, Ill., for defendant-appellant.

Steven Shobat, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, Jr., POSNER and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The principal issue involves the business records exception to the hearsay rule, Rule 803(6) of the Federal Rules of Evidence. Is a drug enforcement agent qualified to authenticate business records under Rule 803(6) if he does not have an accounting background and bases his testimony primarily on statements made by witnesses unavailable at trial? The defendant Antonio Franco argues that under those circumstances an agent is not qualified and appeals the district court's decision to admit records based on such testimony. We affirm the district court's decision and also hold that the district court did not abuse its discretion with regard to supplemental instructions it gave to the jury.

## I. FACTS

On June 16, 1987, a grand jury named Antonio Franco, along with nineteen codefendants, in an eleven count indictment for conspiracy to sell marijuana. Franco was charged with one count of conspiring to knowingly possess with intent to distribute or to knowingly distribute 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a) and 846. Government agents arrested Franco at his home in McAllen, Texas and removed him to Rockford, Illinois. He was the sole defendant in a trial that began on March 21, 1988. On March 29, a jury found Franco guilty of the conspiracy charge; the district court sentenced Franco to thirty-five years imprisonment on May

17, 1988. Franco now appeals his conviction.

At trial, the prosecution produced numerous witnesses who testified that Franco participated in an extensive marijuana distribution network. In 1982 Franco and a friend named Richard Carlson developed a plan to import marijuana from Mexico using vehicles with secret compartments. Franco provided El Camino Chevrolets that Carlson would "remodel" to include fake walls or ceilings. Eventually they added vans and airplanes to their fleet of vehicles. By using fake compartments in the vehicles' interiors, Franco and Carlson transported marijuana from Mexico to Illinois and Texas. Undisputed evidence indicated that between 1982 and 1983 alone Franco and Carlson were responsible for bringing several hundreds of pounds of marijuana to Rockford, Illinois.

Evidence also indicated that Franco and his coconspirators distributed the marijuana in the Rockford area. Richard Carlson's wife testified that she kept extensive records concerning aspects of the drug transactions: payments to Antonio Franco, the costs of parts added to the cars and vans, quantities of marijuana that Richard Carlson kept for himself and for resale, and details about distribution to dealers. Bertha Villareal DeDios stated that in 1982 she worked as a "runner" for her husband. On three separate occasions DeDios testified she went to Franco's house to pick up Ziploc bags filled with marijuana and then gave them to the cook at the restaurant where she worked. The proceeds from these sales were distributed to Franco and DeDios's husband.

In addition to this and other evidence at trial, the government sought to introduce records and ledgers taken from Oscar's Money Exchange (Oscar's), one of approximately twenty money exchanges in the border town of Hildago, Texas. Government agents seized Oscar's records, along with $2.6 million, during a search executed in June 1987 and connected to the indictment of Franco. The records included a listing of the accounts kept at Oscar's, a ledger sheet indicating deposits and withdrawals, two ledger sheets which appeared to be neater reprints of the ledger sheet listing deposits and withdrawals, a list of Oscar's clients, and a binder detailing activity related to accounts, wire transfers, money orders, and cashier's checks.

Outside the presence of the jury, the government sought the admission of Oscar's records and ledgers under the business records exception to the hearsay rule. Fed.R.Evid. 803(6). The government relied primarily on the testimony of Narcotics Agent Jose M. Garza, who searched Oscar's and spoke to Oscar Alvarez, the owner, and Blanca Isabel Ramirez, an employee. Agent Garza testified that he had reviewed the records and had spoken to Alvarez and Ramirez concerning the manner in which they kept the records. At the time of trial, however, neither Alvarez nor Ramirez was available to testify. The defense objected that the records were inadmissible hearsay because Garza was not qualified under the business records exception to introduce the records and the records themselves were untrustworthy. The district court ruled that the records were admissible because they appeared trustworthy and were prepared and maintained in the ordinary course of Oscar's business. The district court refused, however, to admit into evidence statements made by Oscar Alvarez and Blanca Ramirez to Agent Garza.

Agent Garza then described to the jury the contents of the records. Franco had an account at Oscar's that showed a great amount of activity between January and June of 1987. During that time, Franco made over fifteen deposits, the total amount of which exceeded $5.5 million dollars. The balance on Franco's account indicated that $949,000 of the $2.6 million confiscated from Oscar's belonged to Franco. Franco withdrew $250,000 the day before his arrest.

## II. DISCUSSION

### A. *Business Records Exception*

Franco contends that the district court should not have admitted the records taken from Oscar's under the business records

exception to the hearsay rule. Franco argues that Agent Garza was not qualified to testify about the manner in which Oscar's employees prepared and maintained the records because he did not personally observe their actions. Furthermore, Franco asserts that the unavailability of the records' custodian and various deficiencies in the accounting practices at Oscar's indicate that the records are untrustworthy.

Rule 803(6) of the Federal Rules of Evidence defines business records or "records of regularly conducted activity" as

> record[s], or data compilation[s], in any form, of acts, events, conditions ... made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the ... record[s], or data compilation[s], all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed.R.Evid. 803(6).

■ It is within the trial court's discretion to determine whether a proper foundation was laid for application of the business records exception to a particular document and whether the circumstances of the document's preparation indicate trustworthiness. *United States v. Keplinger,* 776 F.2d 678, 693 (7th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). *See also United States v. Zapata,* 871 F.2d 616, 625–26 (7th Cir. Feb. 24, 1989). When making preliminary factual inquiries about the admissibility of evidence under a hearsay exception, the district court must base its findings on the preponderance of the evidence. *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). That evidence, however, may include hearsay and other evidence normally inadmissible at trial. Fed.R.Evid. 104(a) (trial court not bound by the rules of evidence except with respect to privileges); Fed.R.Evid. 1101(d)(1) (rules of evidence do not apply,

except with respect to privileges, to determinations of questions of fact preliminary to admissibility of evidence); *Bourjaily,* 107 S.Ct. at 2780 (Rule 104 permits court to consider any evidence whatsoever, bound only by the rules of privilege).

### (1) Qualified Witness

Franco claims that Agent Garza was not qualified to testify on Oscar's record-keeping practices. He argues that Agent Garza did not have an accounting background and did not personally witness the preparation or maintenance of the business records at Oscar's. Garza admitted that he did not personally know whether entries in the records were made at the same time or near the time of the transaction. Garza also explained that the records contained alterations and did not always correspond with each other.

■ A qualified witness is not required, however, to have "personally participated in or observed the creation of the document," *United States v. Moore,* 791 F.2d 566, 574 (7th Cir.1986), or know who actually recorded the information, *United States v. Dominguez,* 835 F.2d 694, 698 (7th Cir. 1987). We broadly interpret the term "qualified witness" as requiring only someone who understands the system used. *Moore,* 791 F.2d at 574–75. "The witness 'need only be someone with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted.'" *Dominguez,* 835 F.2d at 698 (quoting *United States v. Keplinger,* 776 F.2d 678, 693 (7th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986)); *United States v. Wables,* 731 F.2d 440, 449 (7th Cir.1984).

■ Although this court has not previously examined whether a law enforcement agent may act as a "qualified witness" in this context, we and other circuits have liberally interpreted the term "qualified witness" under Rule 803(6). This court in *United States v. Chappell,* 698 F.2d 308, 311–12 (7th Cir.), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983), held that two former employees of the defendant's company (who testified that the

now deceased accountant was the book-keeper) and a Securities Exchange Commission agent (who was also a certified public accountant) provided sufficient foundation to admit the company records under Rule 803(6). *See also United States v. Draiman,* 784 F.2d 248, 256 (7th Cir.1986) (accountant who was not an employee of the company whose accounts were at issue may testify as to the preparation of the company's accounts). In *United States v. Hathaway,* 798 F.2d 902, 905–07 (6th Cir. 1986), the Sixth Circuit held that a Federal Bureau of Investigation agent could provide foundation testimony on the admission of company records and correspondence under Rule 803(6). The Eighth Circuit in *United States v. Kail,* 804 F.2d 441, 448–49 (8th Cir.1986), admitted under Rule 803(6) records of brokers' commissions taken from a coin and stamp gallery, relying on the testimony of a receptionist who saw the custodian mark the ledger, corroborating testimony of a broker, and hearsay admissions made by the custodian to postal inspectors. *See id.* The Eighth Circuit stated, "Foundation under Rule 803(6) may ... be established by circumstantial evidence, or by a combination of direct and circumstantial evidence." 804 F.2d at 449. Finally, the Third Circuit in *In re Japanese Elec. Products Antitrust Litig.,* 723 F.2d 238, 287–88 (3d Cir.1983), *rev'd sub. nom. on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), eliminated entirely the requirement of live testimony. It agreed with the lower court that " 'the testimony of the custodian or other qualified witness is not a sine qua non of admissibility in the occasional case where the requirements of qualification as a business record can be met by documentary evidence, affidavits, or admissions of the parties.' " 723 F.2d at 288 (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1190, 1236 (E.D. Penn.1980)).

Outside the presence of the jury, Agent Garza described the manner in which the records were prepared and maintained, relying on his conversations with Oscar Alvarez and Blanca Ramirez and his own observations of the records. Alvarez and Ramirez told Agent Garza that Franco would bring bags of money into Oscar's, the money would be counted, and the sums would be noted on a daily work sheet. Later, a bookkeeper from Reynosa, Mexico, named Betty, would transcribe the notations to a neater ledger. Oscar's kept a listing of all its active accounts and auxiliary sheets that cross-referenced the ledgers with account numbers. Withdrawals were recorded on a daily ledger sheet and a binder recorded money orders, cashier's checks, and wire transfers.

Based on this testimony, the district court found that Agent Garza understood the record-keeping system used at Oscar's and could properly testify concerning the records. While Agent Garza could not testify that he witnessed the record-keeping process as it occurred, he indicated by his testimony that he understood the method used to record the transactions carried out at Oscar's. The court relied on hearsay statements to determine whether Agent Garza understood the accounting system at Oscar's but that is clearly permissible under the Federal Rules of Evidence. Given Agent Garza's thorough description of the bookkeeping process and the court's traditionally liberal interpretation of the term "qualified witness" as used in Rule 803(6), we believe that the district court's finding was well within its discretion.

(2) Indicia of Trustworthiness

■ Franco also asserts that the records failed to satisfy Rule 803(6) because they were untrustworthy. Franco points out that entries in the records were altered and that Agent Garza did not interview Betty, the bookkeeper who apparently transcribed the daily notations into a neater ledger. Despite these claims, there was sufficient evidence for the district court to find that the manner in which the records were kept was trustworthy. The district court did not abuse its discretion by finding a preponderance of the evidence in favor of admitting the records.

Oscar's was in fact a business that exchanged customers' pesos for dollars (and

vice versa), similar to the twenty or more currency exchanges in the area of Hildago, Texas. According to Agent Garza's testimony, Oscar Alvarez or one of his employees recorded transactions at Oscar's with daily notations. Betty, the Mexican bookkeeper, periodically tidied up the second set of ledgers. This testimony indicates that notations were made at or near the time that the transaction at issue occurred and that the records were part of the day-to-day operations at Oscar's. The records themselves confirm that contemporaneous entries were made with each transaction because the records, with the exception of the account book, showed neatly written daily entries and notations. *See Draiman,* 784 F.2d at 256 (entries in document itself may help to establish foundation); *cf. Bourjaily,* 107 S.Ct. at 2780–81 (hearsay statements about conspiracy can be probative of the existence of the conspiracy). The district court, after weighing this evidence against proof that the records contained some alterations, determined that the records were trustworthy.

■ Furthermore, circumstances indicate that the records were reliable. *See Bourjaily,* 107 S.Ct. at 2781 ("a piece of evidence, unreliable in isolation, may become quite probative when corroborated by other evidence"). Entries concerning large sums of money were consistently recorded over a long period of time. Independent evidence introduced at trial corroborated

entries made in the records: three wire transfers were both listed in the ledgers and introduced through separate evidence at trial; the records showed that Oscar's should have a large quantity of cash on hand and $2.6 million was, in fact, seized; and a recorded withdrawal made by Franco corresponded to a statement made by Blanca Ramirez to Agent Garza. Finally, the government seized the records without warning, preventing the record custodians from significantly doctoring the records in anticipation of the search. Given these circumstances and the manner in which the records were kept, the district court did not abuse its discretion by finding the records trustworthy.[1]

### B. Supplemental Jury Instructions

Franco also contends that the district court abused its discretion in the supplemental instructions to the jury during deliberations. Franco argues that the court's response left the charge unbalanced and constructively amended the indictment.

The grand jury handed down an eleven count indictment but Franco was only named in the first count. The first count consisted of ten paragraphs, however. The first paragraph of count one gave the elements of the charge and the remaining nine numbered paragraphs identified specific incidents that allegedly were aspects of the conspiracy.[2] Listed in paragraphs two

1. Even if the district court had erred in admitting the records taken from Oscar's, the error would be harmless. Evidence of Franco's role in the conspiracy was substantial. Testimony at trial showed that Franco was in charge of an extensive marijuana network that used cars, vans, and even airplanes to transport marijuana from Mexico to Illinois and Texas. The government primarily used the records taken from Oscar's to show the magnitude of Franco's wealth. The government also demonstrated Franco's wealth through a comparison of Franco's homes in both Texas and Illinois (the jury was shown pictures) and the amount of income stated on his tax returns. Even if the records were inadmissible under Rule 803(6), which they were not, the error would be harmless.

2. The district court read the following indictment to the jury:

    1. Beginning from at least December 31st, 1982, and continuing to at least June 16, 1987,

at Rockford, in the Northern District of Illinois, and elsewhere, the defendant Antonio Franco and others who are named in the indictment, defendants herein, did knowingly and intentionally conspire with each other; with Augustine Martinez, Bryan Carel, Emilio Orozco, and Rafael Carreno; and with other persons known and unknown to the grand jury, to knowingly and intentionally possess with intent to distribute and distribute 1,000 kilograms or more of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

    2. It was part of the conspiracy that the defendants would and did travel between Rockford, the State of Texas, and the Republic of Mexico for the purpose of acquiring marijuana for transportation to and distribution in the Rockford area.

    3. It was further part of the conspiracy that the defendants would and did purchase and rent cars, vans, trucks, boats, and airplanes,

through ten were allegations that the co-conspirators made trips to Mexico, concealed marijuana in vans and cars, distributed marijuana in Illinois, disbursed the proceeds from the sale of marijuana, and concealed the conspiracy through counter-surveillance, communication by code, and legitimate business fronts.

The district court read count one of the indictment to the jury and provided the jurors with a copy of his instructions at the time of deliberation. He also instructed the jurors in part:

In order to establish the offense of conspiracy, the government must prove these elements beyond a reasonable doubt:

1. that the alleged conspiracy existed, and

2. that the defendant knowingly and intentionally became a member of the conspiracy.

.    .    .    .    .

In order to find the defendant guilty, you must unanimously find that the defendant knowingly and intentionally became a member of the conspiracy and that the conspiracy had as its objective the possession with intent to distribute or the distribution of 1,000 kilograms or more of marijuana.

These instructions focused on the first paragraph of count one. Defense counsel did not object.

While deliberating, the jury sent a note to the trial judge asking the following question: "Is the jury to find the defendant innocent or guilty on each count of the indictment?" From the wording of this question, the court determined that the jury mistakenly believed each of the ten paragraphs in count one were separate counts. The court fashioned a response and asked counsel to comment on his proposed instruction which read as follows:

The numbered portions contained in the numbered paragraphs 2 through 10 are merely overt acts alleged as part of the conspiracy. You need not find that the defendant is guilty or not guilty beyond a reasonable doubt of each of those paragraphs. Please refer to the court's instruction.

Defense counsel objected that paragraphs two through ten were not overt acts but merely the means or objects of the conspiracy. Defense counsel argued alternatively that if paragraphs two through ten were overt acts, the court must instruct the jury that the government was obligated to prove those acts beyond a reasonable doubt. The district court removed the word "overt," but defense counsel clung to his second argument, contending that the

which were then sometimes modified to include hidden compartments, in which the defendants would transport marijuana from the Republic of Mexico to the Rockford area.

4. It was further part of the conspiracy that the defendants would and did hire men and women to act as "mules" to transport marijuana from the Republic of Mexico to the Rockford area in the vehicles described in paragraph 3 above.

5. It was further part of the conspiracy that the defendants would and did use a number of business and residential properties in the Rockford area to store, repackage, and distribute marijuana.

6. It was further part of the conspiracy that the defendants would and did distribute and attempt to distribute substantially in excess of $8 million worth of marijuana in the Rockford area.

7. It was further part of the conspiracy that the defendants would and did acquire large sums of currency from the distribution of marijuana in the Rockford area, which currency the defendants distributed among members of the conspiracy, used to purchase additional marijuana, and used to purchase real and personal property in the Rockford area, the State of Texas, and the Republic of Mexico.

8. It was further part of the conspiracy that the defendants would and did convert the currency described in paragraph 6 above into $100 bills which were secreted on their persons or property for transportation to California, Texas, and the Republic of Mexico.

9. It was further part of the conspiracy that the defendants would and did use the telephone to facilitate the conspiracy described above.

10. It was further part of the conspiracy that the defendants attempted to conceal the conspiracy described above by using apparently legitimate businesses and jobs as covers, by communicating with each other in code, and by engaging in countersurveillance.

All in violation of Title 21, United States Code, Section 846.

government was now obligated to prove each allegation in paragraphs two through ten. The court specifically found that this was not a correct assessment of the law and, over the objection of the defense, answered the jury's question in this way:

The answer is: The defendant is only charged with one count, Count 1 of the indictment, namely, knowingly and intentionally conspiring with certain named coconspirators and with other persons known and unknown to the grand jury to possess with intent to distribute and distribute 1,000 kilograms or more of marijuana, a Schedule I Controlled Substance in violation of Title 21, United States Code, Section 821(a)(1). The numbered portions contained in numbered paragraphs 2 through 10 are merely acts alleged as part of the conspiracy. You need not find that the defendant is guilty or not guilty of each of those paragraphs in the indictment. Please refer to the court's instructions.

Franco argues that the supplemental jury instruction "constructively amended" the indictment by omitting from the jury's consideration essential elements of the offense contained in paragraphs two through ten. *See United States v. Williams*, 798 F.2d 1024, 1033 (7th Cir.1986) ("the trial court cannot amend the indictment at the instruction stage by eliminating or changing an essential or material element of the crime"). He also contends that the supplemental jury instruction was unbalanced because it failed to restate the burden of proof and presumption of innocence.

■ "The necessity, extent, and character of any supplemental instructions to the jury are matters within the discretion of the district court." *United States v. Castenada*, 555 F.2d 605, 611 (7th Cir. 1977), *cert. denied*, 434 U.S. 847, 98 S.Ct. 152, 54 L.Ed.2d 113 (1977); *see also United States v. Mealy*, 851 F.2d 890, 901–02 (7th Cir.1988). The district court has a duty to answer a jury's question with "concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). In the past, we have focused on several factors in reviewing the supplemental instructions given by the district court in response to a question from the jury. We consider whether the instructions as a whole fairly and adequately treat the issues, *see, e.g., United States v. Goldstein*, 685 F.2d 179, 183–84 (7th Cir.1982), whether the instructions are a correct statement of the law, *see, e.g., United States v. Otto*, 850 F.2d 323, 326 (7th Cir. 1988), and whether the district court answered the jury's question specifically, *see, e.g., United States v. Zabic*, 745 F.2d 464, 475 (7th Cir.1984). Franco's claim fails because we are satisfied that the district court's instructions met these concerns.

■ Contrary to Franco's assertion, the instructions were not unbalanced. The court's preliminary instructions fairly presented to the jury the applicable points of law and included a balanced discussion of the burden of proof and presumption of innocence. In the supplemental instructions, the court specifically directed the jury to review the original instructions read to it and sent into the deliberation room. A court is not obligated to reinstruct the jury on the burden of proof or presumption of innocence if the instructions as a whole provide a careful explanation of those points of law. Likewise, the district court's supplemental instructions specifically answered the jury's question in a concise and clear manner. The district court did not expound on extraneous issues or mislead the jury.

■ In asserting that the supplemental instructions "constructively amended" the indictment, Franco appears also to attack the original instructions—instructions that he did not object to at trial. The original and supplemental instructions were consistent; both informed the jury that it must find two elements—that a conspiracy existed and that Franco joined the conspiracy. Franco objected when the district court tendered the supplemental jury instructions that the prosecution was also obligated to prove other allegations beyond a reasonable doubt. If Franco believed that the prosecution was required to prove more than the two elements laid out by the court in the original instructions he should have

objected to the original instructions. The jury's question during deliberations apparently gave Franco an opportunity to argue issues that he should have raised earlier. Franco's poor timing, in raising his claim that the prosecution was required to prove more than these two elements, arguably restricts our review. *See United States v. Andrus*, 775 F.2d 825, 852 (7th Cir.1985) (failure to object at trial operates as waiver unless matter below constitutes plain error). The government, however, does not make this argument. We will not ponder the matter further, because we reject Franco's argument that the instructions constructively amended the indictment under any standard of review.

The district court correctly stated the law and did not constructively amend the indictment by removing from the jury's consideration elements of the count. Under 21 U.S.C. § 846, the government is not required to allege or prove an overt act in furtherance of the conspiracy as is required under the general conspiracy statute, 18 U.S.C. § 371. *United States v. Brock*, 782 F.2d 1442, 1444 (7th Cir.1986). The government had the burden of proving that a conspiracy existed and that Franco knowingly and intentionally joined it. The court's supplemental instructions merely reemphasized this point.

This court has previously commented on whether the district court must instruct the jury concerning the extra paragraphs in an indictment that describe the objects and activities of the conspiracy. In *United States v. Williams*, 798 F.2d 1024, 1030, 1032–33 (7th Cir.1986), the first paragraph of the indictment contained the conspiracy count. The seven unnumbered paragraphs that followed it alleged various overt acts of the coconspirators. *See Williams*, 798 F.2d at 1030–31. The court gave a conspiracy instruction identical to the instruction given to Franco's jury and ignored any mention of the seven additional paragraphs in the indictment. *See* 798 F.2d at 1032. The defendants in *Williams* argued that the district court gave erroneous instructions and constructively amended the indictment because it did not mention the seven unnumbered paragraphs. *See* 798

F.2d at 1032–33. According to the *Williams* defendants, the paragraphs contained "essential elements" of the charge. *See* 798 F.2d at 1032. We rejected their argument, stating that

> the seven unnumbered paragraphs do not constitute essential elements of the conspiracy charged.... This circuit has held that "[t]he essential elements of conspiracy under section 846 are the existence of an agreement between two or more individuals, with the intent to commit an offense in violation of the Controlled Substance Act." ... Thus, the government need not allege in the indictment, and the court need not instruct the jury to find, specific roles corresponding to the co-conspirators.

*Williams*, 798 F.2d at 1032 (citations omitted).

Franco ignores *Williams* and fails to provide any authority to support his claim that unessential allegations contained in the count must be proven beyond a reasonable doubt. Franco has merely reworded the *Williams* defendants' argument. The paragraphs numbered two through ten in his indictment were not essential elements of the charge. Therefore the district court was correct in refusing to instruct the jury that the government must prove the allegations in paragraphs two through ten.

Because we find that the records taken from Oscar's Money Exchange were properly admitted under Rule 803(6) of the Federal Rules of Evidence and the district court did not abuse its discretion in its supplemental instructions to the jury, Franco's conviction is AFFIRMED.