T.C. Memo. 2002-45

UNITED STATES TAX COURT

HAROLD WAPNICK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 269-94.                    Filed February 13, 2002.

Harold Wapnick, pro se.

Monica E. Koch and Theresa G. McQueeney, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined deficiencies in petitioner's Federal income tax and additions to tax and penalties as follows:

|       |             | Additions to Tax |            |            |
|-------|-------------|------------------|------------|------------|
| Year  | Deficiency  | Sec. 6653(b)     | Sec. 6661  | Sec. 6654  |
| 1985  | $296,275.88 | [1]$155,784.40   | $74,056.47 |            |
| 1986  | 389,855.00  | [1]169,812.76    | 97,463.75  |            |
| 1987  | 387,838.00  | [1]290,878.50    |            | $119.43    |

[1] Plus 50 percent of the interest due on the portion of the underpayment due to fraud under sec. 6653(b)(2) for 1985 and sec. 6653(b)(1)(B) for 1986 and 1987.

The issues for decision are:[1]

1.  Whether petitioner failed to report income of $600,515 for 1985, $787,080 for 1986, and $1,008,325 for 1987.  We hold that he did.

2.  Whether petitioner is liable for additions to tax under section 6661 for substantial understatement of income tax of $74,056.47 for 1985 and $97,463.75 for 1986.  We hold that he is.

3.  Whether petitioner is liable for the addition to tax under section 6654 for failure to pay estimated tax of $119.43 for 1987.  We hold that he is.

---

[1]  We previously held that petitioner is collaterally estopped from denying that he is liable for the addition to tax for fraud under sec. 6653(b) for 1985, 1986, and 1987 because he was convicted of attempting to evade or defeat tax in violation of sec. 7201 for those years.  Wapnick v. Commissioner, T.C. Memo. 1997-133; see United States v. Wapnick, 60 F.3d 948 (2d Cir. 1995).  In its opinion, the U.S. Court of Appeals for the Second Circuit indicated that petitioner and his associates at one time prepared the tax returns for an estimated 13 percent of New York City's taxi drivers.  United States v. Wapnick, supra at 950.

Section references are to the Internal Revenue Code as amended. Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise specified.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. Petitioner

Petitioner resided in Brooklyn, New York, when he filed his petition. He operated an accounting business known as H. Wapnick & Sons, in which he charged fees for accounting services, preparing tax returns, making loans, and cashing checks. Petitioner's clients made checks payable to petitioner, H. Wapnick & Sons, or cash.

Petitioner's office was in the basement of his home. Steven Wolfson (Wolfson) worked for petitioner there, as did petitioner's sons, John Wapnick and Seth Wapnick. Seth Wapnick graduated from the Wharton School at the University of Pennsylvania. Wolfson graduated from college with a bachelor's degree in accounting in 1979. He worked for petitioner from 1979 through the years in issue.

Petitioner had about 1,200 corporate clients and a number of individual clients during the years in issue. He charged each client $125 per quarter to prepare tax returns. Seth Wapnick kept records of the accounting, tax return preparation, and

lending businesses by entering data on a personal computer in petitioner's basement.

B.    Petitioner's 13 Corporations

Petitioner established the following 13 corporations:  Best Medicare of Brighton, Big John Cab Corp., Centurion Taxi, Inc., Collie Trans. Corp., Downey Cab Corp., D & S Jewelry Corp., Egret Trans. Corp., Eleemosynary Cab Corp., Juice Taxi Co., Inc., Macar Service Corp., Oxus Taxi Inc., Poodle Trans. Corp., and Tree Top Cab Corp. (the 13 corporations).

Petitioner had accounts at Republic National Bank of New York (Republic Bank) for the 13 corporations.  The mailing address for the 13 corporations was petitioner's home. Petitioner was a stockholder in, and officer of, all of them. The 13 corporations did not do business, maintain books and records, hold annual meetings, issue financial statements, pay salaries or dividends, have employees, or file Federal or State corporate tax returns.

When petitioner established the 13 corporations, he used employer identification numbers (EINs) of former clients or numbers that he created.  He did not obtain EINs for the 13 corporations from the Federal government.  At the time of trial, Wolfson did not know the names of any of the 13 corporations.

Petitioner deposited amounts that he earned into the bank accounts for the 13 corporations.  Republic Bank paid interest on

the 13 bank accounts totaling $46,751 in 1985, $86,341 in 1986, and $90,694 in 1987.  Petitioner did not report the interest that Republic Bank paid to the 13 corporations on his tax returns for 1985 and 1986.

## C.   Check Cashing Activity

Petitioner received the following amounts of income for cashing checks for customers:

| Customer | 1985 | 1986 | 1987 |
|---|---|---|---|
| S&Z Fashions Corp. | $55,963.83 | $25,454.17 | $9,789.00 |
| LVA Corp. | | | 25,132.43 |
| McHugh DiVincent Alessi, Inc. | 4,270.00 | 13,763.48 | 11,919.45 |
| E. Chirico, Inc. | | | 25,786.45 |
| Call Enterprises, Inc. | | | 6,391.65 |
| Totals | $60,233.83 | $39,217.65 | $79,018.98 |

Petitioner did not report the amounts that he received from check cashing on his tax returns.

## D.   Treasury Notes

Petitioner bought a $400,000 U.S. Treasury note in the name of Poodle Trans. Corp. and a $600,000 U.S. Treasury note in the name of Big John Cab Corp. on April 3, 1985.  He sold them on January 14, 1986, for a gain of $22,826.  The U.S. Government paid total interest on those notes of $66,222 in 1985 and $20,193 in 1986 to Poodle Trans. Corp. and Big John Cab Corp.  Petitioner did not report these amounts on his 1985 and 1986 tax returns.

E.   Petitioner's Income Tax Returns

Petitioner filed Federal income tax returns for 1985 and 1986 but not for 1987.  He did not report any income from lending or check cashing on those returns.  He reported the following amounts of income:

| Year | Interest | Accounting business | Taxable income |
|------|----------|---------------------|----------------|
| 1985 | $100     | $10,940             | $5,460         |
| 1986 | 300      | 10,188              | 5,908          |

F.   Seizure of Petitioner's Records and Respondent's Determination

Respondent's agents obtained a search warrant and seized the computer and about 260 boxes of records from petitioner's office on December 15, 1988.  The U.S. Attorney's Office for the Eastern District of New York hired a computer expert, who downloaded from the computer the records that Seth Wapnick kept.  Respondent's agents verified the accuracy of some of the computer records by comparing those records with information that respondent obtained from third parties.  Respondent's agents interviewed petitioner's clients and reviewed bank statements, canceled checks, deposit slips, and Forms 1099.  Respondent prepared summaries of the computer records, other business records that petitioner had, and records from third parties.

By notice of deficiency issued on October 21, 1993, respondent determined that petitioner had the following amounts of unreported income:

| Source of Income | 1985 | 1986 | 1987 |
|---|---|---|---|
| Accounting fees | $225,743 | $400,635 | $497,289 |
| Check cashing fees | 60,234 | 39,217 | 79,018 |
| Interest from loans | 201,565 | 217,868 | 341,324 |
| Interest from Treasury notes | 66,222 | 20,193 | |
| Interest from banks | 46,751 | 86,341 | 90,694 |
| Capital gains | | 22,826 | |
| Totals | $600,515 | $787,080 | $1,008,325 |

OPINION

A.   Burden of Proof

Petitioner contends that respondent bears the burden of proof under section 7491, and that respondent's determination is arbitrary or invalid, and thus is not presumed to be correct.  We disagree.

1.   Whether Section 7491 Applies

Under section 7491, the burden of proof is placed on the Secretary if several requirements are met.  Sec. 7491(a)(1) and (2).  Section 7491 applies to court proceedings arising in connection with examinations beginning after July 22, 1998. Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.  Petitioner contends that the examination began after July 22, 1998, and he points out that he was incarcerated on that date.

The notice of deficiency, issued in 1993, states that "from records and information available, it has been determined that you received additional income in the amount shown from the sources indicated".  It also states that the amounts determined

are "per audit".  We conclude that the examination commenced before July 22, 1998.  Therefore, section 7491 does not apply here.

>    2.    Whether Respondent's Determination Is Presumed To Be Correct

Petitioner contends that respondent's determination should not be presumed to be correct and that, as a result, respondent bears the burden of proof.  We disagree.  He points out that in Palmer v. IRS, 116 F.3d 1309, 1312 (9th Cir. 1997), the U.S. Court of Appeals for the Ninth Circuit said that "In an action to collect taxes, the government bears the initial burden of proof." However, petitioner uses that quotation out of context.  In Palmer, the Commissioner sought to enforce a tax lien in a suit in Federal District Court under sections 7401 through 7403.  The Court in Palmer said that the Government's initial burden is satisfied if the Commissioner's determination is presumed to be correct, and that the determination is presumed to be correct if it is supported by a minimal factual foundation.  Id.  Here, respondent's determination is more than adequately supported by computer and other records seized from petitioner's office and information from third parties.  Thus, petitioner bears the burden of proving that the Commissioner's determination is incorrect.  Id.

Petitioner contends that respondent's agents fabricated the records that respondent used to reconstruct petitioner's income.

We disagree.  There is no evidence that anyone fabricated the computer records.

Petitioner cites <u>Scar v. Commissioner</u>, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983), and <u>Abrams v. Commissioner</u>, 814 F.2d 1356 (9th Cir. 1987), affg. 84 T.C. 1308 (1985), for the proposition that the determination in this case is invalid. We disagree.  The notice of determination was deemed invalid by the Court of Appeals in <u>Scar</u> because it was clear from the notice of deficiency itself that the Commissioner had determined a deficiency based on a partnership in which the taxpayers owned no interest.  <u>Scar v. Commissioner</u>, <u>supra</u> at 1370.  Here, respondent's determination was properly based on petitioner's activities and records.  We lacked jurisdiction in <u>Abrams</u> because the taxpayers filed petitions in the Tax Court based on a letter that was not a notice of deficiency.  Unlike <u>Abrams</u>, there was a notice of deficiency in this case.  Thus, neither <u>Scar</u> nor <u>Abrams</u> applies here.

Petitioner contends that respondent's determination is not presumed to be correct because respondent used information to reconstruct his income which would have been inadmissible under the Federal Rules of Evidence if offered as evidence at trial. We disagree.  First, respondent used admissible evidence to reconstruct petitioner's income.  See par. B-2, below.  Second, the Commissioner may determine a deficiency based "on hearsay or

other inadmissible evidence". <u>Cebollero v. Commissioner</u>, 967 F.2d 986, 993 (4th Cir. 1992), affg. T.C. Memo. 1990-618; <u>Zuhone v. Commissioner</u>, 883 F.2d 1317, 1325 (7th Cir. 1989), affg. T.C. Memo. 1988-142; <u>Jackson v. Commissioner</u>, 73 T.C. 394, 400 (1979).

3.   <u>Conclusion Regarding Burden of Proof</u>

We conclude that respondent's determination is presumed to be correct, and petitioner has the burden of proving otherwise. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

B.   <u>Petitioner's Evidentiary Contentions</u>

1.   <u>Whether the Computer Records Are Admissible</u>

Petitioner contends that the computer records are hearsay and thus are inadmissible under rule 802 of the Federal Rules of Evidence.  We disagree because they are records of regularly conducted activity under rule 803(6) of the Federal Rules of Evidence.[2]

---

[2]  Fed. R. Evid. 803(6) provides as follows:

(6) <u>Records of regularly conducted activity.</u>  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, * * * unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term "business" as used in this paragraph includes business, institution, association,
(continued...)

Respondent called former Special Agent Mark Gold (Gold) and Revenue Agent Andrew Rosenblatt (Rosenblatt) to testify to establish that the foundation requirements of rule 803(6) of the Federal Rules of Evidence had been met.  Petitioner contends that their testimony violated rule 702 of the Federal Rules of Evidence relating to expert testimony.[3]  We disagree.  Neither Gold nor Rosenblatt testified as experts.

Petitioner contends that Gold and Rosenblatt were not qualified to provide foundation testimony under rule 803(6) of the Federal Rules of Evidence because they had no role in creating or maintaining the records.  We disagree.  For purposes of rule 803(6) of the Federal Rules of Evidence, a Federal agent may be qualified to establish that a taxpayer's records were kept in the regular course of business.  United States v. Franco, 874 F.2d 1136, 1138-1140 (7th Cir. 1989) (drug enforcement agent); United States v. Hathaway, 798 F.2d 902, 906 (6th Cir. 1986) (Federal Bureau of Investigation agent); United States v. Veytia-Bravo, 603 F.2d 1187, 1191-1192 (5th Cir. 1979) (Bureau of Alcohol, Tobacco, and Firearms agent).

---

[2](...continued)
profession, occupation, and calling of every kind, whether or not conducted for profit.

[3]  Petitioner contends that Rosenblatt's testimony at the criminal trial violated Fed. R. Evid 702 for expert testimony. We need not here consider petitioner's contentions about his criminal trial.

Gold and Rosenblatt testified that they verified the accuracy of the computer records by: (1) Comparing petitioner's copies of clients' tax returns with the information in the computer records; (2) comparing the names of clients in the computer records to client names petitioner wrote on the bank deposit slips; (3) obtaining copies of clients' canceled checks and comparing them to the computer records; and (4) contacting the clients and comparing their records to the computer records. Gold and Rosenblatt verified the accuracy of the computer records for interest income earned from petitioner's lending activity by reviewing loan files, Forms UCC-1, Financing Statement, Confessions of Judgment, and checks. They compared the checks deposited in the Republic Bank accounts with loan information in the computer records. They compared loan repayment checks, receipts, and deposit slips with information in the computer records. The computer records for the lending activity include the name of the client, principal amount of the loan, the interest rate charged, and the dates payments were due and made. Seth Wapnick worked for petitioner and maintained the computer records. We conclude that Gold and Rosenblatt properly provided foundation testimony related to the admissibility of the computer records. See United States v. Franco, supra; United States v. Hathaway, supra; United States v. Veytia-Bravo, supra.

Petitioner contends that some of the computer records were fabricated because a witness at his criminal trial said that the type of computer that Seth Wapnick used was first sold to the public on December 9, 1985, which is after most of the first year in issue. We disagree. First, there is no evidence in our record to support petitioner's contention. Second, even if the December 9, 1985, date is correct, after Seth Wapnick obtained the computer he could have entered data relating to periods before he obtained the computer.

Petitioner contends Rosenblatt and Gold's testimony about the computer records was not credible. We disagree. Rosenblatt and Gold testified credibly and in detail. In contrast, petitioner's testimony was vague and unconvincing on this point.

Petitioner points out that a document entitled "Declaration of Andrew Rosenblatt", an exhibit in his criminal case and attached as part of Exhibit 44-P in this case, had many handwritten markings on it. We admitted another copy of the document without markings as Exhibit 30-R. Rosenblatt did not know who made the handwritten markings on the attachment to Exhibit 44-P, and he could not explain why they were made. Petitioner contends that Rosenblatt's testimony on these points shows that his testimony is not credible. We disagree. Rosenblatt's inability to explain handwritten markings on

petitioner's exhibit does not show that his testimony was not credible.

Petitioner contends that records that he kept by hand would show that the computer records are untrustworthy and not reliable. There is no evidence to support petitioner's contention. Petitioner did not offer any handwritten records into evidence.

We conclude that the computer records are admissible under rule 803(6) of the Federal Rules of Evidence.

2. Whether Summaries That Respondent Prepared Are Admissible

Respondent's agents used data from the computer records and documents related to petitioner's business to prepare summaries of income from interest from banks and loans, check cashing fees, and accounting fees. Petitioner contends that the summaries are inadmissible because respondent's agents prepared them as evidence for use in the trial of this case. We disagree.

Summaries prepared for litigation are admissible if the underlying documents have been admitted into evidence or reasonably have been made available to the opposing party for inspection. Fed. R. Evid. 1006. The summaries are admissible because printed copies of the computer records and other underlying documents were admitted in evidence and were available to petitioner for inspection.

Petitioner points out that respondent has previously filed motions in this case requesting that facts be deemed established. Petitioner objected to those requests in part because he contended that the summaries did not comply with rules 803(6) and 1006 of the Federal Rules of Evidence. We did not grant respondent's requests. Petitioner concludes from our denial of respondent's motions that we agreed with his objections under rules 803(6) and 1006 of the Federal Rules of Evidence. He is incorrect. We denied respondent's requests that facts be deemed established because the case was not ready for trial. We have not previously decided whether respondent's summaries complied with rules 803(6) and 1006 of the Federal Rules of Evidence.

Petitioner relies on Potamkin Cadillac Corp. v. B.R.I. Coverage Corp., 38 F.3d 627, 632 (2d Cir. 1994), for the proposition that respondent's agents' summaries are inadmissible because they were prepared for litigation. The summary at issue in Potamkin Cadillac Corp. was not admitted because it was inaccurate, it required significant interpretation of data, and it was "not simply a downloading of information previously computerized in the regular course of business." Id. at 633. Potamkin Cadillac does not support petitioner's position. We conclude that the summaries are admissible. Fed. R. Evid. 1006.

C.    Whether Petitioner Had Unreported Income in the Amounts
      Determined by Respondent

      1.    Bank and U.S. Treasury Note Interest, Capital Gains,
            and Check Cashing Income

Petitioner does not dispute respondent's determination of the amounts of the bank interest, Treasury note interest, capital gains, and check cashing income.  Instead, he disputes to whom it is taxable.  Petitioner contends that the unreported interest, capital gains, and check cashing income are taxable to the 13 corporations.  Petitioner contends that interest and capital gains earned with respect to the U.S. Treasury notes are taxable to 2 of those 13 corporations; namely, Poodle Trans. Corp. and Big John Cab Corp.  We disagree.

A corporation is recognized for Federal income tax purposes if it was formed for a legitimate business purpose, or, if after formation, it conducted legitimate business.  Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943); United States v. Wapnick, 60 F.3d 948, 955 n.3 (2d Cir. 1995); Natl. Investors Corp. v. Hoey, 144 F.2d 466, 468 (2d Cir. 1944).  However, a corporation is disregarded for Federal income tax purposes if its owners "move their own funds in and out of a corporate account without any regard for which funds belong to the corporation and which belong personally to the corporation's owners".  United States v. Wapnick, supra (holding that this statement of law was

properly included in the jury instructions in petitioner's criminal case).

For reasons discussed next, we do not recognize the 13 corporations for Federal income tax purposes. Petitioner used false EINs when forming the corporations. The 13 corporations did not follow any corporate formalities such as maintaining books and records, issuing stock, holding annual meetings, electing officers, or issuing financial statements. They did not have employees, they paid no salaries or dividends, and they did not conduct any legitimate business. They did not file tax returns. Petitioner did not treat the 13 corporations as separate business entities. He often lent money from one corporate account and deposited repayments for that loan in other corporate accounts.

Petitioner contends that the 13 corporations provided tax preparation, money lending, and check cashing services. We disagree. There are no documents in evidence that show there were any business transactions between a client and any of the corporations. No checks payable to any of the 13 corporations were produced at trial. Petitioner's clients made checks for services payable to petitioner, H. Wapnick & Sons, or cash.

Petitioner testified and contends that he did not own all of the stock of the 13 corporations. He contends that John Wapnick and Seth Wapnick bought Centurion Taxi, Inc., at the end of 1987;

- 18 -

he did not own Macar Service Corp.; and Ruth Wapnick bought Oxus Taxi, Inc. in 1986. We disagree. There is no evidence corroborating his assertions. He did not call his wife or sons as witnesses. We conclude that the 13 corporations were shams, and we disregard them for tax purposes.

Petitioner contends that the interest income paid to Oxus Taxi, Inc. is not taxable to him because his wife reported all of it. We disagree. After the criminal investigation began, petitioner's wife filed an income tax return on which she reported a gain on the 1988 sale of Oxus Taxi, Inc., stock. There is no evidence that she reported any interest income paid to Oxus Taxi, Inc. in the years in issue. Petitioner has not carried his burden of proving that he is not taxable for income generated in the name of Oxus Taxi, Inc., in the years in issue.

We conclude that petitioner is taxable on income that he received from cashing checks, and on the interest and capital gains with respect to the $400,000 and $600,000 U.S. Treasury notes.

2. Income From Loans

Petitioner contends that he had no income from lending money because many of the loans he made were not repaid. A taxpayer may deduct a bad debt in the year it becomes wholly or partially worthless. Sec. 166(a)(1) and (2); sec. 1.166-2(a), Income Tax

Regs. Petitioner contends that he had more than $3 million in bad debts in 1988 from the lending activity.

Petitioner contends that he is entitled to carry back a net operating loss of $1,006,000 from 1988 to 1987 and to carry forward a net operating loss of $1,594,000 from 1988 to 1989 and later years. We disagree. Petitioner's vague testimony is the only evidence supporting his claim.

Petitioner attached to his answering brief a document which states that a judgment was entered on October 9, 1992, in the Supreme Court of the State of New York, County of Kings, in favor of Ruth Wapnick against the Estate of Joseph Elashvili in the amount of $153,015. Petitioner contends that this document shows that loans to the Estate of Joseph Elashvili were worthless. This document was not offered or admitted into evidence. Even if it had been admitted, there is no evidence that the debt described in the document became worthless during the years in issue, that the judgment is uncollectible, or that the judgment related to a loan made by petitioner which is at issue in this case.

Petitioner lent $40,000 to Alberto, Inc., and contends that Alberto, Inc., repaid only $11,000. Petitioner contends that his loan to Alberto, Inc., resulted in a $29,000 loss. We are not convinced that petitioner lost $29,000 as a result of his loan to

Alberto, Inc., because petitioner's only evidence supporting his contention was his vague and uncorroborated testimony.

Petitioner contends that all of the bad debts from the lending activity became totally worthless on December 15, 1988, the date that the search warrant was executed and respondent took all of his documents. We disagree. The mere fact that notes and records which were evidence of the loans are not immediately available to petitioner does not show that the loans were worthless. See Perry v. United States, 51 AFTR 1234, 56-1 USTC par. 9526 (S.D. Ga. 1956) (bad debt deduction not allowed in year when lender's business records and promissory notes were stolen). Petitioner offered no evidence that the debts were worthless. We are not convinced that execution of the search warrant caused all of the debts to become worthless.

Petitioner contends that respondent's agents told the parties to whom he lent money to pay respondent instead of him. There is no credible evidence to support that contention.

Petitioner contends that he received less income from loans than respondent determined. However, petitioner's vague and uncorroborated testimony is less convincing than the documentary and other evidence provided by respondent. We conclude that petitioner had unreported income from loans to third parties of $201,565 in 1985, $217,868 in 1986, and $341,324 in 1987.

### 3. Alleged Brokerage Account Losses

Petitioner contends that respondent failed to account for margin charges and large losses that he allegedly sustained in his Brown & Co. brokerage account in 1985, 1986, and 1987. There is no evidence to support petitioner's claim.

### 4. Conclusion Regarding Unreported Income

We sustain respondent's determination that petitioner had unreported income of $600,515 for 1985, $787,080 for 1986, and $1,008,325 for 1987.

## D. Failure To Pay Estimated Tax Under Section 6654

Respondent determined that petitioner is liable for the addition to tax under section 6654 for failure to pay estimated tax for 1987. We have jurisdiction to review this determination because the taxpayer did not file a return for 1987. Sec. 6665(b)(2); Meyer v. Commissioner, 97 T.C. 555, 562 (1991).

Petitioner offered no evidence and made no argument on this issue. We conclude that petitioner is liable for the addition to tax for failure to pay estimated tax under section 6654 for 1987.

## E. Whether Petitioner Is Liable for the Addition to Tax for Substantial Understatement of Income

Petitioner contended in the petition that he is not liable for the addition to tax for substantial understatement of income tax under section 6661(a) for 1985 and 1986. Section 6661(a) imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of

income tax.  Petitioner bears the burden of proving that he is not liable for the addition to tax under section 6661.  Rule 142(a).  He offered no evidence or argument that he is not liable for the addition to tax under section 6661(a).  We conclude that petitioner is liable for the section 6661(a) addition to tax for 1985 and 1986.

F.   Petitioner's Procedural Contentions

   1.   Whether Time To Assess Taxes Had Expired

   Petitioner contends that the time to assess the taxes at issue expired before respondent issued the notice of deficiency.  We disagree.  The Commissioner may assess tax at any time if the taxpayer files a fraudulent return or fails to file a return.  Sec. 6501(c)(1), (3).  Petitioner filed fraudulent returns for 1985 and 1986, Wapnick v. Commissioner, T.C. Memo. 1997-133, and did not file a return for 1987.  Thus, respondent's notice of deficiency is timely.

   2.   Summary Judgment

   Petitioner contends that he is entitled to summary judgment based on his contention that the 13 corporations are not shams, that he had more than $3 million in bad debts in 1988, and that he was wrongly convicted in his criminal case.  We disagree.  Summary judgment is not appropriate here because material facts are in dispute.  We have found that petitioner's 13 corporations

are shams and that he did not show that he had bad debts in 1998. Petitioner's arguments for summary judgment lack merit.

3. Review Jeopardy Assessments

Petitioner in essence asks us to reconsider orders of this Court dated June 2 and July 27, 1995, denying his motions to review respondent's jeopardy assessments. Petitioner contends that the jeopardy assessments are invalid because, to make them, respondent used data which would have been inadmissible under the Federal Rules of Evidence if offered as evidence at trial. We disagree for reasons stated at paragraphs A-2 and B-2, above.

4. Reconsideration of Order Deeming Matters Stipulated Under Rule 91(f)

In his posttrial brief, petitioner requested that we reconsider our pretrial order deeming certain documents and facts stipulated. Respondent had moved to compel stipulation of facts under Rule 91(f) on February 16, 2001. Respondent requested that we should deem stipulated copies of the notice of deficiency, petitioner's income tax returns for 1985 and 1986, documents from the U.S. Treasury and Republic Bank, schedules showing petitioner's income from accounting services, loans and check cashing based on the computer records, on petitioner's other records, and on records from third parties, and the judgment from petitioner's criminal case. Respondent also requested that we deem stipulated that petitioner did not file an income tax return for 1987, the 13 corporations did not file Federal or State

corporate tax returns, and petitioner used false EINs for the 13 corporations.

We ruled on respondent's motion following a pretrial hearing. At the hearing, respondent showed sources, reasons, and bases for facts and exhibits that we deemed stipulated, and showed that petitioner had reasonable access to those sources or bases for stipulation. Petitioner did not show any sources, reasons, or bases for refusing to stipulate to those exhibits and facts. We granted respondent's motion in large part, but we denied it to the extent that respondent had not produced underlying documents relating to summaries. Summaries not deemed stipulated were later admitted at trial after respondent provided those underlying documents. See paragraph B-2, above.

Petitioner contends that we should reconsider our order partially granting respondent's motion to compel stipulation of facts under Rule 91(f). We disagree. Petitioner's reasons to oppose stipulation are the same as those that he raised in his request for summary judgment and review of the jeopardy assessment, and in his post-trial briefs. We rejected those arguments in paragraphs F-2 and F-3, above. We conclude that reconsideration is not warranted here.

5. <u>Conform Pleadings to Evidence</u>

Petitioner contends that the pleadings in this case should be conformed to the evidence under Rule 41(b).

However, petitioner does not state how the pleadings should be changed or state what evidence supports his request. See Rule 41. Petitioner's request to conform pleadings to the evidence lacks merit.

6. Petitioner's Request for Admissions

Petitioner contends that respondent did not respond to his request for admissions. We do not address this contention further because there is no evidence that petitioner served respondent with a request for admissions under Rule 90.

For the foregoing reasons, we sustain respondent's determination. To reflect the foregoing,

Decision will be

entered for respondent.